IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ARROWOOD SURPLUS LINES INSURANCE COMPANY, | ) ) ) | CIVIL NO. 13-00505 LEK-KSC |
| Plaintiff, | ) ) | FINDINGS AND RECOMMENDATION TO DENY |
| vs. | ) ) ) | DEFENDANTS' MOTION TO TRANSFER VENUE |
| PAUL RYAN ASSOCIATES, INC.; NORTH AMERICAN CAPACITY INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO DENY
DEFENDANTS' MOTION TO TRANSFER VENUE

Before the Court is Defendants Paul Ryan
Associates, Inc. ("PRA") and North American Capacity
Insurance Company's ("NAC") (collectively "Defendants")
Motion to Transfer Venue, filed December 20, 2013.
Plaintiff Arrowood Surplus Lines Insurance Company
("Plaintiff") filed an Opposition and Request for
Judicial Notice on January 7, 2014.  On January 14,
2014, Defendants filed a Reply.

This matter came on for hearing on January 28,
2014.  Kevin Sumida, Esq., appeared, and Cheryl Orr,
Esq., appeared by phone on behalf of Plaintiff.  Ralph

O'Neill, Esq., appeared on behalf of Defendants.  After careful consideration of the Motion, the supporting and opposing memoranda, the arguments of counsel, and the applicable law, the Court HEREBY FINDS AND RECOMMENDS that the Motion be DENIED for the reasons set forth below.

<u>BACKGROUND</u>

On July 16, 1999, PRA and Thomas Weisel ("Mr. Weisel") entered into a construction contract for the construction of the Weisel residence in Kihei, Maui, Hawaii.  Plaintiff issued a commercial general liability insurance policy to PRA for the period November 1, 2001, to November 1, 2002 ("subject policy" or "policy").  NAC issued commercial general liability policies to PRA for the periods July 1, 2002 to July 1, 2003, July 1, 2003 to July 1, 2004, and July 1, 2004 to July 1, 2005.  The Weisel project was substantially completed on September 13, 2002.

In the spring of 2007, PRA notified Plaintiff and NAC of a construction defect claim asserted against it that arose from the construction of the Weisel

2

residence.  Mr. Weisel claimed multiple construction defects, including failure of weatherproofing and drainage of the sliding glass doors throughout the residence, which allegedly led to leakage and corrosion, swelling and deformation of the sliding doors, skylight leaks, window leaks, and water intrusion.

On October 6, 2010, Mr. Weisel filed a state court action in California, asserting breach of contract, negligence, breach of warranty, and strict liability against PRA.  NAC agreed to defend and potentially indemnify PRA for the foregoing claims, subject to a reservation of rights.  Plaintiff agreed to defend PRA against the claims, but did not agree to fully settle the claims against PRA and did not participate in the settlement.  NAC settled the claims against PRA in September 2013.

On October 3, 2013, Plaintiff commenced this action, requesting 1) a declaration that there is no coverage and no duty to indemnify PRA for the Weisel construction defect claim under the subject insurance

3

policy and 2) assuming there was property damage during the policy period, any obligation to indemnify any settlement of the construction defect claim must be equally apportioned between Plaintiff and NAC. Plaintiff additionally asserts that it should not be liable for more than the pro rata share of the settlement of the construction defect claim based on the relevant period, which is the two month period after substantial completion of the project.

<u>DISCUSSION</u>

Defendants move to transfer this action to the Northern District of California.  Even if a district court is a proper venue for a case under 28 U.S.C. § 1391, the district court may transfer the case to another district for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of the section is "to prevent

4

the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964) (quoting <u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26-27 (1960)). Section 1404(a) vests "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 27 (1988) (citation and internal quotation marks omitted).

In applying § 1404(a), the Court engages in a two-part inquiry.  First, the Court determines whether the action could have been brought in the transferee court.  Second, the Court considers whether "the transfer 'will enhance the convenience of the parties and witnesses, and is in the interests of justice.'"[1]

---

[1]   In assessing the interest of justice prong, the Court also considers public and private interest factors borrowed from the doctrine of _forum non conveniens_.  <u>Lung v. Yachts Int'l, Ltd.</u>, 980 F. Supp. 1362, 1370 (D. Haw. 1997) (citing <u>Decker</u>, 805 F.2d at 843).  The public factors include:

Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d
1232, 1243 (D. Haw. 2003); see also Kawamoto v. CB
Richard Ellis, Inc., 225 F. Supp. 2d 1209, 1213 (D.
Haw. 2002).  If a court finds that the other forum is
*clearly more convenient*, it will transfer the action.
Robinson, 304 F. Supp. 2d at 1243.

---

> (1) administrative difficulties flowing
> from court congestion; (2) imposition of
> jury duty on the people of a community
> that has no relation to the litigation;
> (3) local interests in having localized
> controversies decided at home; [and] (4)
> the interest in having a diversity case
> tried in a forum familiar with the law
> that governs the action ... [and] the
> avoidance of unnecessary conflicts of law.

Robinson, 304 F. Supp. 2d at 1244 (citing Lung, 980 F.
Supp. at 1370) (citation omitted).  Private factors
include:

> (1) relative ease of access to sources of
> proof; (2) the availability of compulsory
> process for attendance of unwilling
> witnesses, and the cost of obtaining
> attendance of witnesses; (3) possibility
> of viewing subject premises; [and] (4) all
> other factors that render trial of the
> case expeditious and inexpensive.

Id. (citing Lung, 980 F. Supp. at 1370) (citation
omitted).

It is the moving party's burden to demonstrate that an alternative forum is the more appropriate forum for the action.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir. 2000).  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).

The Ninth Circuit has set forth multiple factors that a court may weigh in considering a motion for change of venue.  Jones, 211 F.3d at 498.  These factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Id. at 498-99 (internal footnotes omitted).

It is undisputed that Plaintiff could have brought the action in the Northern District of California.  The Court therefore considers the <u>Jones</u> and other factors in its assessment of whether transfer will enhance the convenience of the parties and witnesses and whether it is in the interest of justice. After considering and balancing the aforementioned factors, the Court finds that they support retention of this action.

1.   <u>Location of the Relevant Agreements</u>

Defendants argue that the location of the agreements supports transfer because the subject policy was negotiated, delivered to, and accepted by PRA in San Francisco.  Defendants also deem significant the fact that the construction contract was negotiated and executed in San Francisco.[2]  Plaintiff does not dispute

---

[2]   The construction agreement is irrelevant to the transfer inquiry because it is not the subject of this action.  Curiously, Defendants stress the significance of the construction contract with respect to this factor and factor two, yet they are dismissive of the fact that the construction defects occurred in this district.

that PRA is a California corporation, that the
construction contract was executed in California, or
that the policy was delivered in California.  However,
Plaintiff disputes the relevance of these facts because
the central dispute in this litigation is whether the
Weisel residence construction project was completed
within the policy period and if so, whether any
property damage was caused by an occurrence that took
place during the policy period.

The claims in this declaratory action concern
Plaintiff's obligations under the policy.  For the
purposes of this factor then, the relevant agreement is
the subject insurance policy.  Inasmuch as there is no
dispute that it was negotiated and delivered in San
Francisco, this factor weighs in favor of transfer.
Nat'l Union Fire Ins. Co. of Pittsburgh v. Simpson Mfg.
Co., 829 F. Supp. 2d 914, 928-29 (D. Haw. 2011);
Liberty Surplus Ins. Corp. v. Perma-Pipe, Inc., No. C
13-0908 RS, 2013 WL 4529473, at *5 (N.D. Cal. Aug. 26,
2013) (in deciding to transfer a case to the Northern
District of Illinois, which concerned the contractual

duties of the plaintiff insurer, the court considered,
among other factors, that the plaintiff insurance
company had issued and delivered an insurance policy to
the defendant in Illinois); <u>McDaniel v. GEICO Gen. Ins.
Co.</u>, No. 1:12-CV-2028 AWI JLT, 2013 WL 1790167, at *4
(E.D. Cal. Apr. 26, 2013) (considering that the
insured's address on the policy was within the forum
district and that it appeared that the negotiations
took place at least in part in the forum district).

2.  <u>The State Most Familiar With the Governing Law</u>

        The parties dispute what law governs the
policies.  Defendants believe that California
substantive law applies because the construction
agreement included a California choice of law provision[3]
and because the subject policy and NAC policies were
delivered to PRA in California.  Plaintiff submits that
Hawaii substantive law will apply.

---

        [3]  Any choice of law provision in the construction
agreement is irrelevant.  This dispute concerns the
insurance policy.

If this case is transferred, the transferee court would apply Hawaii's choice of law rules to determine what law governs the insurance policies. Newton v. Thomason, 22 F.3d 1455, 1459 (9th Cir. 1994) (The transferee court is required to "follow the choice of law rules of the transferor court" when a case is transferred under 28 U.S.C. § 1404(a)). If Hawaii law were found to apply, this factor would weigh in favor of Plaintiff. If California law were found to apply, this factor would support Defendants' position. The Court finds that this factor is neutral because the Northern District would be the more appropriate venue if California law governs, but this Court would be the more appropriate venue if Hawaii law governs. Nat'l Union, 829 F. Supp. 2d at 929.

3. Plaintiff's Choice of Forum, Parties' Contacts With the Forum, Contacts Relating to Plaintiff's Cause of Action in the Chose Forum

A plaintiff's choice of forum is generally afforded substantial weight. Sec. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985); Decker Coal, 805 F.2d at 843. However, the deference

11

accorded to a plaintiff's choice is substantially reduced when a plaintiff does not reside in the chosen venue, when the forum lacks a significant connection to the activities alleged in the complaint, or when the plaintiff has engaged in improper forum shopping.[4] Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  In this case, none of the parties are Hawaii companies with their principal places of business here.  Plaintiff is organized under the laws of Delaware and its principal place of business is in Charlotte, North Carolina.  PRA is a California corporation with its principal place of business in San Francisco, but it does business in Hawaii and has an office in Hawaii.  NAC is a New Hampshire corporation with its principal place of business in New Hampshire, but it too conducts business in Hawaii.

Although this declaratory action will merely determine Plaintiff's obligations under the subject policy, the actions giving rise to this litigation

---

[4]  There are no allegations, nor evidence, of forum shopping.

occurred on Maui.[5]  The construction defect claims
asserted against PRA regarding the construction of the
Weisel residence in Kihei led to the current dispute.
Accordingly, there are significant contacts with this
forum and Plaintiff's choice of forum is given some
weight, notwithstanding the fact that Plaintiff does
not reside in Hawaii.

As already noted above, the parties also have
contacts with California because the subject policy was
negotiated and delivered there.[6]  But that fact alone
does not compel transfer when there are significant

---

[5]  Defendants disregard the underlying dispute's
connection to this forum.  They cite a District of
Oregon case, Home Indem. Co. v. Stimson Lumber Co., 229
F. Supp. 2d 1075, 1083-84 (D. Or. 2001), noting that
the court refused to transfer the case to a district
where the underlying tort occurred.  To the extent Home
Indemnity is cited for that proposition, PRA's reliance
on the case is misplaced.  In this case, Plaintiff
commenced the action where the underlying tort
occurred; it is not asking that the case be transferred
to the location of the tort.  The fact remains that
there is a connection between the subject matter of
this litigation and this forum because this is where
the construction defects occurred.

[6]  The Court already considered this with respect
to the first factor and found that it weighed in favor
of transfer.  Nat'l Union, 829 F. Supp. 2d at 929.

13

contacts with this forum as well.  Defendants identify
Plaintiff's denial of PRA's demand to settle as the
injury in this case, and in turn assert that because
said injury occurred in California, that California has
a greater connection to the parties and the subject
matter.  The Court is not persuaded.  PRA is a
defendant in this case, not the plaintiff.  This action
is not about the purported "injury" that PRA claims it
suffered in California.  Plaintiff commenced this
action to obtain a declaration about its obligations
under the policy.  There are no allegations by PRA
against Plaintiff for wrongdoing.  As such, the fact
that Plaintiff refused to settle in California is of no
consequence.

        Given the contacts with this forum, the Court
finds that factors three, four, and five weigh in favor
of retaining this action.

4.   Differences in Costs of Litigation in the Two
     Forums

        Defendants argue that the costs of litigating
in Hawaii would be significantly higher because all of

14

the party witnesses are in the Northern District of California.   Neither side has presented projected costs related to this litigation.   Without having the requisite information before it, the Court cannot reasonably assess the differences in costs.   It appears that some party witnesses are on the mainland.[7] Arguably then, it would be more convenient and less costly for them to travel to Northern California, assuming any travel is even required.   However, the travel costs for non-party witnesses would be a wash.

The two non-party witnesses identified by Defendants are in Northern California, so the Northern District would be an economical venue from a cost and convenience perspective for Defendants.   The Hawaii subcontractors are located in this district so proceeding here would be more economical for Plaintiff.

---

[7]   Defendants represented, with respect to the "Ease of Access to Sources of Proof" factor, that material witnesses include PRA's Senior Vice President and Chief Financial Officer, PRA's counsel, and NAC's adjuster.   That it would be cheaper and more convenient for three party witnesses to appear in the Northern District than this forum is not alone sufficient to compel transfer.

15

Evidence is located both here and in the Northern District and with the accessibility of documents through electronic means, the Court cannot say that proceeding in one forum would be more costly than the other.  Finally, the Weisel residence is located in this forum.  If a site visit is required, proceeding here would be less costly.  Based on the limited information provided, and on balance of the potential costs of litigating, the Court finds that this factor weighs slightly against transfer.

5.   <u>Availability of Compulsory Process to Compel Attendance of Non-Party Witnesses</u>

Defendants have identified two non-party witnesses from whom they intend to offer testimony: Ron Froom and Mr. Weisel.  Defendants represent that Mr. Froom, PRA's insurance broker, will offer testimony about the negotiation and purchase of the subject policy, as well as PRA's reasonable expectations of coverage for claims related to the construction of the Weisel residence.  Defendants intend to offer Mr. Weisel regarding the negotiations of the construction

16

agreement and PRA's insurance requirements under the
contract.   Defendants assert that because these
witnesses are not within the subpoena power of this
Court, this factor weighs heavily in favor of transfer.
The Court disagrees.

Just as Defendants intend to call non-party
witnesses, so does Plaintiff.[8]  Plaintiff anticipates
that testimony from the Hawaii subcontractors hired by
PRA for the construction of the Weisel residence will
be necessary to adjudicate this dispute.   Plaintiff
contends that the Hawaii subcontractors are likely the
best witnesses as to whether operations on the Weisel
project were fully completed before the expiration of
the policy period and if so, what property damage
occurred during the policy period, if any.

Interestingly, Defendants argue that Plaintiff
may utilize Federal Rule of Civil Procedure 45 to

---

[8]   The parties dispute the relevance of the other
parties' non-party witnesses' testimony.  The Court
declines to make relevance determinations at this
preliminary stage in the case.  The Court limits its
assessment to the availability of the compulsory
process.

compel testimony from the subcontractors if the action is transferred, that depositions may be taken in Hawaii, and any such deposition testimony may be used at trial for "unavailable witnesses."  Why these procedures are sufficient for Plaintiff's non-party witnesses but not Defendants' own non-party witnesses is unclear.  Because Plaintiff and Defendants intend to call non-party witnesses, and neither side would be able to avail themselves of the compulsory process depending on the forum in which this case proceeds, this factor weighs against transfer.  Transfer is not appropriate when it would merely shift the inconvenience from one party to another.  Decker Coal, 805 F.2d at 843 (upholding denial of transfer where liability witnesses were in one forum but damages witnesses were in another because the "transfer would merely shift rather than eliminate the inconvenience").  Defendants do not satisfy their burden to change venue by simply shifting inconvenience from themselves to Plaintiff.  Home Indemn., 229 F. Supp. 2d at 1084.

Moreover, inasmuch as Mr. Froom is closely aligned with PRA, it is reasonable to expect that he may voluntarily appear on behalf of Defendants,[9] whereas Plaintiff's lack of relationship with the Hawaii subcontractors will likely require the utilization of the compulsory process to compel their appearance at trial.  For these reasons, this factor weighs against transfer.

6.  <u>Ease of Access to Sources of Proof</u>

Defendants assert that the sources of proof are all in California, including party witnesses, relevant documents generated in the underlying action, public records regarding the underlying action, and policy documents.  Defendants further note that counsel who represented Plaintiff and PRA in the underlying action are located in San Francisco.  Plaintiff argues that the subcontractors are located in Hawaii, along with construction records and the project site.

---

[9]  At the hearing, defense counsel conceded that because of PRA's relationship with Mr. Froom, he would willingly participate if asked.

19

The Court finds this factor to be neutral because while documents and witnesses related to the underlying action and the policy are in the Northern District, documents and witnesses related to the construction are located in Hawaii. <u>Nat'l Union</u>, 829 F. Supp. 2d at 929. Neither party has identified the volume of records in either forum. Even if the records in California are voluminous, there is no showing that moving the documents to this district would affect the accessibility of such evidence. Moreover, "[t]o the extent that the evidence in California, or elsewhere, is documentary, its location is largely irrelevant because it would need to be copied and delivered to [P]laintiff[] in discovery or produced at trial regardless of its location." <u>Home Indemn.</u>, 229 F. Supp. 2d at 1073.

7.  <u>Court Congestion</u>

"The key inquiry in docket congestion is 'whether a trial may be speedier in another court because of its less crowded docket.'" <u>Costco Wholesale Corp. v. Liberty Mut. Ins. Co.</u>, 472 F. Supp. 2d 1183,

1195-1196 (S.D. Cal. 2007) (citation omitted).
According to statistics provided by Plaintiff, as of
September 30, 2013, each judge in the Northern District
had 481 pending cases, while each judge in this
district had 272 pending cases.  <u>See</u> www.uscourts.gov/
Statistics/FederalCourtManagementStatistics/district-
courts-september2013.aspx.  In this district, the
median time from filing to trial is 9.7 months.  <u>Id.</u>
In the Northern District, the time is 27.4 months from
filing to trial.  <u>Id.</u>  Given that this district is less
congested and the case would proceed to trial far more
expeditiously, this factor weighs against transfer.

8.  <u>Public Policy Considerations/Local Interest</u>

This factor is neutral because it turns on what
law will be applied.  In addition, both forums have an
interest – this district because the underlying
construction defect occurred on Maui and the Northern
District because the policies were negotiated and
delivered there.

In sum, after carefully balancing the
applicable factors, the Court finds that they weigh

21

against transfer. Defendants have not met their burden of establishing that the Northern District is the more appropriate forum, nor have they made a strong showing of inconvenience.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that Defendants' Motion to Transfer Venue, filed December 20, 2013, be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, January 29, 2014.



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 13-00505 LEK-KSC; <u>ARROWOOD V. PAUL RYAN, ET AL.</u>; FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO TRANSFER VENUE